**Roland T. MARSHALL et al.,**
**Plaintiffs,**

v.

**ELECTRIC HOSE AND RUBBER COM-**
**PANY et al., Defendants.**

**Civ. A. No. 4708.**

United States District Court,
D. Delaware.

Nov. 26, 1974.

**602**

Louis L. Redding, Wilmington, Del., and Kenneth L. Johnson, Johnson, Smith, Opara & Erlich, P.A., Baltimore, Md., for plaintiffs.

R. Franklin Balotti, Richards, Layton & Finger, Wilmington, Del., and Elbert H. Coles, Memphis, Tenn., of counsel, for defendant Electric Hose and Rubber Co.

James A. Walsh, Wilmington, Del., and George B. Vasko, John H. Campbell and Harley M. Kastner, Akron, Ohio, of counsel, for United Rubber, Cork, Linoleum and Plastic Workers of America, Local 184 and United Rubber, Cork, Linoleum and Plastic Workers of America.

William A. Carey, Gen. Counsel, William L. Robinson, Associate Gen. Counsel, Roberta V. Romberg, Asst. Gen. Counsel, Richard B. Slosberg, Supervisory Trial Atty., Washington, D. C., Nan Aron, Washington, D. C., Trial Atty. and Louis L. Redding, Wilmington, Del., of counsel, for Equal Employment Opportunity Commission, applying to intervene as a party-plaintiff.

## OPINION

LATCHUM, Chief Judge.

The original complaint in this suit was filed by the plaintiffs, Roland T. Marshall ("Marshall"), Paul L. Carson ("Carson") and Henry T. Jones ("Jones"), as black citizens against the defendant Electric Hose and Rubber Company ("Company") charging that the Company maintained a policy, practice, custom or usage of discriminating against the plaintiffs and the plaintiffs' class [1] because of their race or color. In addition, the plaintiffs charged that the defendants, United Rubber, Cork, Linoleum and Plastic Workers of America Local 184 ("Local Union") and United Rubber, Cork, Linoleum and Plastic Workers of America ("International Union"), maintained a policy or practice of discriminating against the plaintiffs and the plaintiffs' class with respect to an "apprentice-ship" program and that both the Local and International Unions failed to fairly represent the plaintiffs and the plaintiffs' class because of their race or color.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(4).

The claims asserted by the plaintiffs are alleged to arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Labor Management Relations Act of 1947, 29 U.S.C. § 151, et seq.[2]

The plaintiffs seek compensatory and punitive damages, a declaratory judgment as to their rights and a permanent injunction against the allegedly discrim-

---

1. The individual plaintiffs also purport to bring this suit on behalf of a class "composed of Black persons who have been employed or might be employed and Black persons who have been denied employment because of their race or color." No effort has been made to certify this suit as a class action.

2. The Labor Management Relations Act requires a union, as an exclusive bargaining agent, to serve the interests of all employees without hostility or discrimination. Woods v. North American Rockwell Corp., 480 F.2d 644, 648 (C.A.10, 1973).

inatory practices of the defendant Company, Local Union and International Union.

Before any responsive pleading was filed by the defendants, the plaintiffs filed an amended complaint which reasserted all the allegations of the original complaint and added Willie C. Dallas ("Dallas") and James M. Toppin ("Toppin"), two other black citizens, as plaintiffs.

The case is presently before the Court on motions brought, pursuant to Rule 12(b)(6), F.R.Civ.P., to dismiss the amended complaint for failure to state a claim upon which relief can be granted. One argument advanced by all the defendants is that the complaint is deficient because it contains only broad and conclusory allegations without specific facts to support those allegations. The Local Union also argues that all matters alleged in the complaint were solely and totally within the province of the Company and that the discriminatory practices alleged, if they occurred, had a history before the Local Union became the exclusive bargaining agent for the Company's employees.

 The International Union argues that it is not a proper defendant in this action because it was not a party to the collective bargaining agreement between the Company and the Local Union.[3]

The final argument for dismissal is that the plaintiffs Marshall, Carson and Jones failed to file their original complaint in this court within a ninety day period after the date appearing on the right to sue notice of the Equal Employment Opportunity Commission ("EEOC") as required by 42 U.S.C. § 2000e–5.

As an alternative to the motions to dismiss the complaint, the defendants move, pursuant to Rule 12(e), F.R.Civ.P., for a more definite statement setting forth a great amount of factual detail regarding the alleged discrimination.

The above arguments will be considered by the Court seriatim.

## I. SPECIFICITY.

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Hence, it is generally considered immaterial whether a pleading states "conclusions" or "facts" as long as fair notice of the alleged wrong is given. Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); 2A Moore's Federal Practice, 2d. ed., ¶ 8.13, p. 1698.

The defendants here argue that an exception has been created to "notice pleading" for cases brought under the Civil Rights Acts and that even without this exception the present complaint fails to give fair notice as is always required by Rule 8(a)(2).

There can be no doubt that some courts, including the Third Circuit, require greater specificity in pleadings alleging misconduct and resultant harm in cases brought under 42 U.S.C. § 1983 or § 1985. Kauffman v. Moss, 420 F.2d 1270, 1275–1276 (C.A. 3, 1970); Negrich v. Hohn, 379 F.2d 213 (C.A. 3, 1967); Valley v. Maule, 297 F.Supp. 958 (D.Conn.1968). The Third Circuit has found that this requirement of increased specificity is necessary to enable the trial court to make an informed judgment whether or not the wrong com-

---

3. The International Union also raised the argument in its motion to dismiss that it was not timely advised of the charges filed against it and that a decision rendered by the EEOC on July 24, 1972 contains no finding as to any discrimination that could have possibly been caused by the International Union. These points were not briefed or argued before the Court and no cases on the point have ever been cited. As a result, the Court will consider these arguments as having been abandoned by the International Union.

plained of was of federal cognizance. Gittlemacker v. Prasse, 428 F.2d 1, 6 (C.A. 3, 1970); Rodes v. Municipal Authority of the Borough of Milford, 409 F.2d 16, 17 (C.A. 3, 1969), cert. den., 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 114, reh. den., 396 U.S. 950, 90 S.Ct. 377, 24 L.Ed.2d 256 (1969).

The difficulty with the defendants' argument, however, is that while the language of the above cited cases may be broad enough to encompass all "Civil Rights Cases" they were brought under 42 U.S.C. § 1983 or § 1985 and as a consequence provide only dicta with respect to actions brought under § 1981 or Title VII.[4] Thus, while the *principle* expressed in those cases may in theory apply with equal force to actions under 42 U.S.C. § 1981 and Title VII, *see*, Scott v. University of Delaware, 385 F.Supp. 937, 944–945 (D.Del. 1974), there is no assurance that the degree of specificity required in accordance with that principle in actions brought under § 1983 and § 1985 is the same as that which would be required in actions brought under § 1981 and Title VII.

■ In *Scott* this Court did not attempt to articulate the degree of specificity which may be required by the Third Circuit beyond that required by normal application of Rule 8(a)(2). Although in *Scott* this Court held that the complaint in question failed to allege "*facts*" which indicated unlawful conspiratorial activity it did not hold that specific evidentiary facts were needed. Thus, *Scott* can and should be read as being consistent with Jenkins v. General Motors Corporation, 354 F.Supp. 1040, 1048 (D.Del.1973) which held in an action based on 42 U.S.C. § 1981 and Title

VII that a plaintiff need only plead a concise statement of his "claim" and need not plead *evidentiary* facts. As a consequence the Court in this case will not require that evidentiary facts such as specific names, dates and places be pleaded in this § 1981 and Title VII action.

The issue before the Court is, therefore, reduced to the question of whether or not the present pleading meets the "fair notice" requirement of Rule 8(a)(2) and whether or not the present pleading is specific enough to enable this Court to ascertain if there is a federally recognizable claim as is required by the principle expressed in the *Kauffman* line of cases.

A) Complaint Against The Company.

In the present case the plaintiffs have charged that:

> "The defendant company with full knowledge, cooperation and complicity of defendant unions, has discriminated against and continues to discriminate against the individually named plaintiffs and the class they represent on the grounds of race and color. These acts, practices, policies and customs of racial discrimination include, but are not limited to, the specifics set forth below: recruitment, job qualifications, hiring, assignment, promotion, transfer, layoff, recall, discipline, discharge benefits, and apprenticeship training programs." (Par. 10, Amended Compl.).

This pleading is not without serious shortcomings. First, there is no allegation that white citizens are granted rights or privileges by the Company which are not afforded to black citizens

---

4. While several courts do appear to require that some "factual basis" be pleaded in § 1981 and Title VII cases, in each case this requirement appears to be predicated on the fair notice requirement inherent in Rule 8(a)(2) and *not on any exception* to the Rule 8(a)(2) requirement. Serzysko v. Chase Manhattan Bank, 461 F.2d 699, 701 (C.A. 2, 1972), cert. den., 409 U.S. 883, 93 S.Ct.

173, 34 L.Ed.2d 139, reh. den., 409 U.S. 1029, 93 S.Ct. 470, 34 L.Ed.2d 324 (1972); Corcoran v. W. Yorty, 347 F.2d 222, 223 (C.A.9, 1965); Edwards v. North American Rockwell Corp., 291 F.Supp. 199, 211–213 (C.D. Cal.1968); and Nishiyama v. North American Rockwell Corporation, 49 F.R.D. 288, 293–294 (C.D.Cal.1970).

as is required even under notice pleading to predicate an action under § 1981. *See,* Willis v. Chicago Extruded Metals Company, 358 F.Supp. 848, 851 (N.D. Ill.1973). Second, while there is a list of generic activities in which the Company allegedly practices racial discrimination, no inkling is given of the manner in which the alleged discrimination is carried out or perpetuated in those activities.

■ To comply with fair notice pleading and the *Kauffman* line of cases, the complaint should at least allege in general terms what acts, customs, practices or policies are followed by the Company which have the effect of favoring white citizens over black citizens in "recruitment, job qualifications, hiring, assignment, promotion, transfer, layoff, recall, discipline, discharge benefits, and apprenticeship training program". If this were done, it would put the Company on fair notice of those customs, policies and practices which are being challenged as discriminatory, it would enable the defendants to focus on those practices in order to respond to the charges and in addition, it would enable the Court to determine whether there is a reasonable basis for a federally recognized claim under § 1981 and Title VII.

The complaint in United States v. Gustin-Bacon Div. Certain-Teed Prod., 426 F.2d 539, 543 (C.A. 10, 1970) is exemplary of the degree of specificity which would appear to satisfy both the "fair notice" and the Third Circuit requirements. In *Gustin* the Tenth Circuit Court of Appeals reversed the district court which had dismissed a complaint because it failed to allege "facts pertaining to the pattern or practice of discrimination." The complaint below alleged that a company engaged in a pattern or practice of employment discrimination against non-whites in the following particulars:

"(a) Failing to hire Negro and other non-white applicants for employment who are more qualified than white applicants who apply for the same or similar positions and are hired,

(b) Failing to assign its Negro and other non-white employees to the more desirable and better-paying jobs while reserving such jobs for its white employees and forcing out of such positions Negroes and other non-whites who have reached such jobs.

(c) Administering and grading tests for assignment to jobs in such manner as to give preferential treatment to white applicants and to exclude Negro and other non-whites similarly qualified.

(d) Failing to provide opportunities for advancement to supervisory positions to its Negro and other non-white employees equal to those opportunities provided to its white employees."

The Appeals Court held these allegations were sufficient under Rule 8(a)(2) to inform the defendant of the nature of the claims so as to enable it to frame an answer but that it was unnecessary for the complaint to set forth "such evidentiary matters as names, dates, places, etc., of discriminatory practices or patterns." These allegations also appear to be specific enough to satisfy the principles announced in the *Kauffman* line of cases.

■ The present complaint falls short of the Gustin-Bacon complaint. It is deficient in that it fails to allege what acts, practices, policies or customs are involved that favor white over black citizens. As a result, the plaintiffs will be required to amend their complaint within 20 days to correct this deficiency without pleading evidentiary details of names, dates, places, etc.

B) Complaint Against The Unions.

With respect to the Unions, the plaintiffs charge they:

" . . . have been discriminated against because of their race or color in the apprenticeship training program which is run jointly by the [Local] Union and the Company. The

plaintiffs and their class have also been discriminated against by Local 184 and the International Union (defendant union) in that the union has failed fairly to represent them because of their race or color. The defendant International Union acted in joint concert and participation with the defendant Local 184 in all of the unlawful discriminatory acts and practices described in this complaint."

(Par. 11, Amended Compl.).

■■ Although the Court cannot accept the Local Union's argument that all the matters alleged in the complaint were matters solely and totally within the province of the Company in light of the express allegation that the Local Union joins the Company in operating a discriminatory apprenticeship training program, the Court concludes, for the reasons expressed above with respect to the Company, that the plaintiffs again have not alleged what acts, practices, policies or customs the Unions are engaged in which favor whites over blacks in operating the apprenticeship training program and in providing union representation. Accordingly, the Court will require the plaintiffs to amend the complaint to allege in general terms what practices, policies and customs are utilized by the Unions to discriminate against blacks in favor of whites in these two areas.

## II. PROPRIETY OF HAVING THE INTERNATIONAL UNION AS A DEFENDANT.

■ The International Union advances the unusual argument that since it was not a party to the collective bargaining contract with the Company, it is neither an indispensable or necessary party to a just adjudication of the controversy and under Rule 19, F.R.Civ.P., should be dismissed from the suit. There is no merit to this contention. Rule 19 is concerned with joining parties needed for a just adjudication when they have not been joined; it has nothing to do with dismissing a party who has been joined. Moreover, the fact that the International Union was not a party to the collective bargaining contract with the Company is not grounds for dismissing it from this suit. In U. S. A. v. T. I. M. E.—DC, Inc., 4 E.P.D. ¶ 7881 (N.D.Texas 1971), the Court refused to dismiss the International Union from a 2000e suit, stating:

" . . . the Court has noted that although the international unions were not themselves signatory parties to any of the contracts in question, they have been alleged by plaintiff to have been vital parties to the bargaining negotiations from which those contracts resulted. In view of these allegations, it is the opinion of this court that they are proper parties to this suit, and said motions to dismiss by the international unions are therefore denied."

■ In the present case the plaintiffs have alleged that the International Union acted in joint concert and participation with the Local Union. The International Union appears to lend support to the allegation by stating in its brief [5] that a representative of the International Union not only rendered assistance to the Local Union during bargaining sessions but also was a signator to the contract. In view of these allegations and the *T.I.M.E.—DC* case, the International Union's argument that it should be dismissed because it was not a party to the agreement is rejected by the Court.

## III. 90 DAY PERIOD.

■ The final argument of the defendants is that plaintiffs Marshall, Carson and Jones should be dismissed as named plaintiffs for their failure to file their original complaint in this court within a ninety day period required by

5. Docket Item 12, pp. 5, 6.

42 U.S.C. § 2000e–5 which reads in part:

" . . . within ninety days after the giving of such notice [a right to sue letter from the E.E.O.C.] a civil action may be brought . . . ."

Once the 90 day period runs, the right to sue letter is ineffective to provide the Court with jurisdiction to entertain the claim of the named party. E.E.O.C. v. Cleveland Mills Co., 502 F.2d 153, 156 (C.A. 4, 1974); Miller v. International Paper Co., 408 F.2d 283, 287, 292 (C.A. 5, 1969). Thus, if Marshall's, Carson's and Jones' 90 day periods expired the Court has no jurisdiction to entertain a suit brought by them as named parties.[6]

In the present case, Marshall, Carson and Jones each attached to their complaint right to sue letters from the EEOC which were dated May 21, 1973. Suit was commenced 92 days later on August 21, 1973. The defendants contend that the ninety day period started on the date of the letter, May 21, 1973 and, therefore, those plaintiffs filed in court two days too late.

 The fact is that the time period during which a private party may bring an action under 42 U.S.C. § 2000e–5 has been consistently held to begin when notice is actually received,[7] Cunningham v. Litton Industries, 413 F.2d 887, 890 (C.A. 9, 1969); Beckum v. Tenn. Hotel, 341 F.Supp. 991, 993 (W. D.Tenn.1971); Garneau v. Raytheon Co., 323 F.Supp. 391 (D.Mass.1971), and does not begin on the date of the right

to sue letter, Jackson v. Cutter Laboratories, Inc., 338 F.Supp. 882 (E.D.Tenn. 1970). As a consequence, it cannot be determined from the complaint that Marshall, Carson and Jones filed too late and the defendants' motion to dismiss Marshall, Carson and Jones will therefore be denied. Of course, if at a later date through discovery procedures it is revealed that Marshall, Carson and Jones filed more than 90 days after they actually received notice, the defendants may renew their motion to dismiss as to them.

## IV. INTERVENTION OF EEOC.

 Following the argument on defendants' motions to dismiss, the EEOC moved to intervene as a party plaintiff pursuant to Rule 24(b)(1), F.R.Civ.P. That rule provides that "upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene". Section 2000e–4(g)(6) provides that the EEOC shall have power "to intervene in a civil action brought under section 2000e–5 of this title by an aggrieved party against a respondent other than a government, governmental agency or political subdivision."

The Court as a matter of discretion will permit the EEOC to intervene since it will not unduly delay or prejudice the adjudication of the rights of the other parties. While the case has been pending for some time, no responsive pleadings have been filed nor has any discov-

---

6. The possibility still remains that Marshall, Carson and Jones may remain in the suit as members of a class represented by plaintiffs Dallas and Toppin who clearly filed within the 90 day period. However, the issue of class certification is not before the Court at this time.

7. While the 1972 amendments changed the length of the time period during which a civil action can be brought from 30 days "thereafter" [from the notification] to 90 days "after the giving of such notice," the amendments did not change the prior case

law which held that the time period involved begins to run only "after receiving notification". Section-By-Section Analysis of H.R. 1746, The Equal Employment Opportunity Act of 1972 by Senators Williams and Javits, 118 Cong.Rec. 7166, 7168 (daily ed. Mar. 6, 1972); See right to sue letters in this case (Exs. 1, 2 & 3 to amended compl.) which read in part " . . . you are hereby notified that you may within ninety (90) days *of receipt of this communication,* institute a civil action. . . . " (Emphasis added).

ery been undertaken. Furthermore, the disposition of the case may be materially aided by the EEOC's expertise in the matter.

An order will be entered in accordance with this opinion.