EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

WESTINGHOUSE ELECTRIC CORP.,
NUCLEAR TURBINE PLANT, Char-
lotte, North Carolina, and Westinghouse
Electric Corporation, Winston-Salem,
North Carolina, Defendants.

No. C–77–174–WS.

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Jan. 30, 1979.

Lawrence H. Kamenetzky, Trial Atty.,
Atlanta Regional Litigation Center, Atlan-
ta, Ga., Abner W. Sibal, Gen. Counsel, E. E.
O. C., Washington, D. C., for plaintiff.

Guy F. Driver, Jr., of Womble, Carlyle,
Sandridge & Rice, Winston-Salem, N. C.,
for defendants.

MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, District Judge.

This matter came on for hearing before
the Court on December 20, 1978, upon plain-
tiff's motion for class certification, pursu-
ant to Rule 23, Federal Rules of Civil Proce-
dure.

The plaintiff, Equal Employment Oppor-
tunity Commission (EEOC), filed a com-
plaint in the Western District of North
Carolina on October 1, 1975, alleging that
defendants had engaged in unlawful em-
ployment practices in violation of Title VII
of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e et seq. The alleged practices in-
cluded refusing to hire blacks because of
their race, refusing to hire applicants be-
cause of their religion, "maintaining depart-

ments and job classifications which are segregated on the basis of race or color, and otherwise limiting, segregating and classifying employees in a way which deprives blacks of employment opportunities . . ." Complaint at 2, ¶ 7. The case was transferred to the Middle District of North Carolina on April 15, 1977.

■ The plaintiff attempted to proceed with a statutory class action based upon Title VII, contending that EEOC was not subject to the provisions of Rule 23, Fed.R. Civ.P. This Court, citing *E.E.O.C. v. D. H. Holmes Co.,* 556 F.2d 787 (5th Cir. 1977), rejected such approach and ordered plaintiff to move for class certification pursuant to Rule 23(c)(1), Fed.R.Civ.P., and Local Rule 17(b)(3). *See* Order filed June 2, 1978. EEOC, wishing to maintain an "across-the-board" class action, has now moved for class certification. It seeks to represent a class composed of all past, present, and future black employees and black applicants for employment at the Westinghouse facilities in Charlotte and Winston-Salem, North Carolina.

■ Any plaintiff who desires to represent a class must present facts which show the existence of such a class. *See Wheeler v. Anchor Continental, Inc.,* 80 F.R.D. 93 (D.S.C.1978); *Lim v. Citizens Savings & Loan Association,* 430 F.Supp. 802 (N.D.Cal.1976). *See also Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1312 (4th Cir. 1978). Therefore, before certifying a broad, "across-the-board" class, a court must be presented with evidence which reveals a reasonable inference of across-the-board discrimination.[1] *Garrett v. R. J. Reynolds Industries, Inc.,* 81 F.R.D. 25, 32 (M.D.N.C. 1978). If no such inference of discrimination is revealed, the plaintiff would not have shown that the defendant had acted on grounds generally applicable to the proposed class, as required by Rule 23(b)(2), Fed.R.Civ.P. The plaintiff would also have failed to meet the commonality and typicality requisites of Rule 23(a)(2) & (3), Fed.R. Civ.P.

■ The plaintiff has the burden of proving that this suit is properly maintainable as a class action. *Doctor v. Seaboard Coast Line Railroad,* 540 F.2d 699, 707 (4th Cir. 1976); Local Rule 17(b)(5). In attempting to meet this burden, EEOC has presented the Court with only a few facts. It asserts that from July, 1967, through April 1, 1975, it "has discovered over 600 black applicants for employment to the Westinghouse facility at Charlotte . . . [and that d]uring all or most of this period, defendant was in a hiring posture." Plaintiff's Motion to Certify the Class, at 2 (filed July 14, 1978). EEOC also states that there were over 600 black applicants to Westinghouse in Winston-Salem in 1974. These bare figures, as presented by plaintiff, are absolutely meaningless. For example, plaintiff has failed to present statistics of the number of white and black applicants *actually* hired.

EEOC claims its discovery shows that the Charlotte and Winston-Salem facilities each employ about 1000 persons, of whom 15 percent are black. It has failed, however, to include any breakdown of departments within the facilities, and it has presented no data on the available minority work force with which to compare the sketchy employment figures. *See Garrett v. R. J. Reynolds Industries, Inc., supra,* 81 F.R.D. at 37; *Lim v. Citizens Savings & Loan Association,* 430 F.Supp. 802, 806–07 (N.D.Cal. 1976). EEOC also asserts that over 80 percent of the black employees are concentrated in the "Operations classifications," but this term is not defined. Furthermore, the Court is not told the percentage of whites in those classifications.

EEOC asserts that its "complaint and annexed motion show that defendant has acted and refused to act on grounds generally applicable to the proposed class. . . ." Plaintiff's Memorandum in Support of the Motion to Certify the Class, at 7 (filed July 14, 1978). The Court must disagree. The facts presented by plaintiff in its motion are insubstantial and incomplete, and they

1. The evidence is usually in the form of an analysis of statistical data.

are definitely insufficient to allow a reasonable inference of across-the-board discrimination.[2] EEOC is left, then, with mere conclusory allegations of across-the-board discrimination. However, the plaintiff may not rely on unsupported allegations. *Belcher v. Bassett Furniture Industries, Inc.,* 588 F.2d 904, at 906, (4th Cir. Dec. 5, 1978); *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1312 (4th Cir. 1978); *Garrett v. R. J. Reynolds Industries, Inc., supra,* 81 F.R.D. at 29 and 50–51; *Wheeler v. Anchor Continental, Inc.,* 80 F.R.D. 93, 98-99 (D.S.C.1978). As the Fourth Circuit Court of Appeals has explained:

> Discrimination cases do not qualify as *per se* class actions; they must meet the requirements . . . for class certification the same as any other type of action and may not be treated as true class actions merely because they are supported by "*boiler plate memoranda laden with self-serving conclusions.*" Any notion that such cases do not require the same inquiry with reference to compliance with [Rule] 23 as other types of cases was authoritatively dispelled by the decision in *East Texas Motor Freight v. Rodriguez,* [431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)] . . ..

> . . . . .

> In resolving the issue of class certification, *the court may not confine itself to the allegations of the complaint.*
> *Shelton v. Pargo, Inc.,* 582 F.2d at 1312 (emphasis added) (footnote omitted).

Therefore, considering plaintiff's presentation alone, this Court would deny class certification.

EEOC apparently assumes that in Title VII cases a broad class should be certified merely on a brief recitation of a few limited facts and unsupported assertions of across-the-board discrimination. Certifying class actions in such cases, however, should not be a perfunctory judicial exercise. The ramifications of allowing a case to proceed as a class action greatly affect the plaintiffs, the defendants, and the Court. This is especially so when the case involves alleged across-the-board discrimination. Certification of a very broad class, therefore, should not be granted on an exiguous presentation like EEOC's. The Fourth Circuit has noted that although courts in the past tended to treat the certification issue somewhat cavalierly,

> [t]hat mood no longer prevails. Courts have begun to give to class certification questions the care and attention they deserve and this applies to racial discrimination cases as well as to any other type of class actions.
> *Shelton v. Pargo, Inc.,* 582 F.2d at 1312 (footnote omitted).

■ The defendants, in opposing plaintiff's motion, have presented employment statistics and analysis prepared by Dr. Joan Haworth and Dr. Charles Haworth. The analysis clearly indicates the impropriety of class certification in this case. As part of their presentation, the Haworths used the binomial distribution method of analysis which was approvingly utilized by the United States Supreme Court in *Hazelwood School District v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977), and *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), and which was used by this Court in denying certification of an attempted across-the-board class action. *Garrett v. R. J. Reynolds Industries, Inc.,* 81 F.R.D. 25 (M.D.N.C.1978). The Haworths' analysis shows the absence of any reasonable inference of across-the-board discrimination. *See* Appendix (Copy of Ex-

---

**2.** EEOC did assert that at least 78 job classifications at the Charlotte facility and at least 147 classifications at the Winston-Salem facility have never been held by a black. Of the meager evidence presented by plaintiff, this factual assertion comes closest to inferring some discrimination. However, these two figures are still insufficient, by themselves and without ex-

planation, to warrant certification of an across-the-board class. This conclusion is reinforced by the figures proffered by defendants as to the number of job classifications (titles) having only a few employees. *See* Affidavit of Charles Taylor Haworth, Exhibit No. 3 (filed Aug. 25, 1978).

hibit No. 1 of Charles Taylor Haworth's Affidavit, filed Aug. 25, 1978). Furthermore, the statistics of blacks actually hired by defendants and the minority-availability figures do not indicate any inference of discrimination in hiring. *See* Affidavit of Charles Taylor Haworth, Exhibit No. 2 (filed Aug. 25, 1978).

Surprisingly, EEOC states that "[a]t this juncture . . . the Commission will not dispute the facts and conclusions supplied by Doctors Charles and Joan Haworth." Plaintiff's Supplemental Memorandum in Support of Its Motion to Certify the Class, at 2 (filed Oct. 10, 1978). With no dispute as to these facts, class certification in this case is most assuredly unwarranted.[3]

Therefore, IT IS ORDERED that plaintiff's motion to certify a class be, and the same hereby is, DENIED.

## APPENDIX[4]

### WESTINGHOUSE ELECTRIC CORPORATION

Winston-Salem & Charlotte Plants

COMPARISON OF ACTUAL WORKFORCE COMPOSITION TO SMSA CIVILIAN LABOR FORCE (CLF).

Winston-Salem Plant—[Winston-Salem, Greensboro, High Point SMSA]

|  | Total Number of Employees | Percent Black in SMSA CLF | Acceptable Range of Black Percentages * | Actual Black Percentages of Plant Workforce |
|---|---|---|---|---|
| 1976 | 1041 | 16.1 | 13.8% – 18.3% | 15.7% |
| 1975 | 1075 | 16.3 | 14.0% – 18.5% | 15.2% |
| 1974 | 1091 | 15.9 | 13.6% – 18.1% | 14.2% |
| 1973 | 917 | 15.9 ** | 13.5% – 18.3% | 14.1% |

---

**3.** EEOC may argue that, by requiring the presentation of some evidence and examining such evidence for an inference of discrimination, this Court has actually ruled on the merits. However:

> . . . Judge Russell noted in *Doctor,* 540 F.2d at 708, that " 'on the merits' is an elusive term at best," and he recently explained in *Shelton,* 582 F.2d at 1312, that "[a]n intelligent decision on class certification requires 'at least a preliminary exploration of the merits' of the plaintiff's claim." This does not mean that the Court is ruling on the merits when it makes such exploration. The Court simply needs sufficient information (more than mere allegations) to make a reasonable and informed judgment on the issue of class certification. *Doctor v. Seaboard Coast Line R. R.,* 540 F.2d 699, 708 (4th Cir. 1976). . .

> [T]he Court has not found as a fact that individual blacks have or have not been discriminated against on the basis of their race. . . . [T]his ruling has no res judicata effect on whatever claims may be later presented. Rather the Court . . . is saying that . . . the plaintiffs have failed to establish for the purpose of class certification that blacks . . . as a class are treated differently.

*Garrett v. R. J. Reynolds Industries, Inc., supra,* at 50.

**4.** Copy of Exhibit No. 1 of Charles Taylor Haworth's Affidavit, filed August 25, 1978.

532

Charlotte Plant—[Charlotte SMSA]

| | Total Number of Employees | Percent Black in SMSA CLF | Acceptable Range of Black Percentages * | Actual Black Percentages of Plant Workforce |
|---|---|---|---|---|
| 1976 | 996 | 18.4 | 15.9% – 20.8% | 17.4% |
| 1975 | 999 | 18.8 | 16.3% – 21.3% | 16.4% |
| 1974 | 985 | 18.1 | 15.6% – 20.5% | 16.1% |
| 1973 | 892 | 18.1 ** | 15.5% – 20.6% | 17.1% |

\* Derived by using the SMSA civilian labor force black percentage plus or minus 2 standard deviations from it. This procedure is in accordance with the technique approved by the Supreme Court in footnote 14 of the case known as *Hazelwood School Dist. v. U. S.*

\*\* 1973 data not available for the SMSA, so 1974 data was used.